UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| EMANUEL LOLLIS, )<br>   Plaintiff, )<br> )<br>vs. )<br> )<br>GREG DONATHAN, et. al., )<br>   Defendants )  | Case No. 21-4212 |

CASE MANAGEMENT ORDER

JAMES E. SHADID, U.S. District Judge:

The *pro se* Plaintiff is detained in the Rushville Treatment and Detention Center and seeks leave to proceed *in forma pauperis*. The "privilege to proceed without posting security for costs and fees is reserved to the many truly impoverished litigants who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them." *Brewster v. North Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972). Additionally, a court must dismiss cases proceeding *in forma pauperis* "at any time" if the action is frivolous, malicious, or fails to state a claim, even if part of the filing fee has been paid. 28 U.S.C. § 1915(d)(2). Accordingly, this Court grants leave to proceed *in forma pauperis* only if the complaint states a federal claim.

In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *See Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "'state a claim for relief that is plausible on its face.'" *Alexander v. U.S.*, 721 F.3d 418, 422 (7th Cir. 2013)(quoted cite omitted).

Plaintiff began this action with a motion for emergency injunctive relief. [1].  In an abundance of caution, a lawsuit pursuant to 42 U.S.C. §1983 was opened, but Plaintiff was advised he would need to file a complaint clearly setting forth his allegations and Defendants. *See* December 21, 2021 Text Order.  Plaintiff has responded with a proposed complaint which has been filed as a Motion for Leave to Amend. [3]. The Motion is granted pursuant to Federal Rule of Civil Procedure 15. [3].

Plaintiff has identified the following Defendants: Illinois Department of Human Services (IDHS) Director Greg Donathan, Nursing Director Heather Hogan, Clinical Director Shan Jumper, and Nurse Jane Does 1-6.

Plaintiff's complaint begins with an overview of his problems with high blood pressure leading to headaches, dizziness, and fainting.  Plaintiff says an unspecified doctor required nursing staff to monitor his blood pressure beginning in October of 2021, but nursing staff still refused to see him on or failed to inform the doctor when his blood pressure numbers were high.  Unfortunately, the specific factual basis for Plaintiff's claim is hard to discern due to the repetitive nature of Plaintiff's complaint and jumping between different time periods.

Nonetheless, Plaintiff has included these specific claims:

- On August 21, 2021 and September 2, 2021, Plaintiff reported he was dizzy, but a nurse refused to take his blood pressure.

-On September 20, 2021, Plaintiff reported chest pains and his blood pressure was recorded as 128/83.

- On September 24, 2021, Plaintiff had chest pains, dizziness, and his blood pressure was at 142/91.

-On October 7, 2021, nurses ignored Plaintiff's symptoms and refused to take his blood pressure.

-On October 9, 17, 18, and 19, 2021, Plaintiff's blood pressure was elevated. A doctor then ordered nurses to regularly check Plaintiff's blood pressure and notify him if it was elevated. It is unclear how often nurses were instructed to check Plaintiff's blood pressure.

-On October 25, 2021, Plaintiff reported shooting pains on his left side and his blood pressure was recorded at 169/112. A doctor was notified, and Plaintiff was sent to an outside hospital. Plaintiff does not provide further information about this visit.

-On November 9, a nurse refused to see Plaintiff despite his reported symptoms.

-On November 19, 2021, Plaintiff passed out, a doctor was notified, and medication was administered.

-On November 22, 2021, Plaintiff passed out again, a doctor was notified, and medication was provided.

-On December 13, 2021, Plaintiff passed out, but a nurse refused to provide any medical care. The next morning, security staff checked Plaintiff's cell for alcohol and drugs. Plaintiff appears to believe Defendant Director Donathan was responsible for the search.

Plaintiff says he personally informed the Director of Nursing, Heather Hogan, that her staff was not providing care or monitoring of his condition, but she failed to take any action.

Plaintiff was ultimately referred to a heart specialist on January 7, 2022. Plaintiff was told his "left ventricular hypertrophy valve was damaged" due to unchecked high blood pressure and the damage was irreparable. (Comp., p. 6).

Plaintiff has adequately alleged Defendant Heather Hogan and the Jane Doe nursing staff violated Plaintiff's Fourteenth Amendment rights when they either refused to respond when he reported dizziness, headaches, or shortness of breath;

refused to monitor his blood pressure; or refused to notify a doctor when his blood pressure numbers were high from August 2021 through January of 2022.

Plaintiff has not clearly articulated a claim against Director Greg Donathan or Clinical Director Shan Jumper. The mere fact that a defendant was a supervisor is insufficient to establish liability because the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under 42 USC §1983. See *Smith v. Gomez*, 550 F.3d 613, 616 (7th Cir. 2008)(supervisor liability not permitted under § 1983); *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992)(supervisors are not liable for the errors of their subordinates).

Plaintiff has also failed to articulate a constitutional violation related to the search of his cell for alcohol and drugs. Finally, Plaintiff does not make a clear reference to Defendant Jumper's involvement in his allegations. See *Kuhn v. Milwaukee County*, 59 F. App'x 148, 150 (7th Cir. 2003) (merely naming defendants in the caption of a complaint does not state a claim against them). Therefore, the Court will dismiss the remaining Defendants for failure to state a claim upon which relief can be granted.

Unfortunately, the last two pages of Plaintiff's complaint appear to be a Motion for Emergency Injunctive Relief which were not filed as a separate motion. (Comp., p. 9-10). A court may grant a temporary restraining order (TRO) only if the motion provides "specific facts in an affidavit or a verified complaint clearly showing that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). This relief is warranted "to prevent a substantial risk of injury from ripening into actual harm." *Farmer v. Brennan*,

4

511 U.S. 825, 845 (1994). A TRO is an "emergency remedy" designed to "maintain the status quo until a hearing can be held on an application for a preliminary injunction." *Crue v. Aiken,* 137 F.Supp.2d 1076, 1082 (C.D.Ill. April 6, 2001).

On the other hand, a preliminary injunction can be issued only after the adverse party is given notice and an opportunity to oppose the motion. *See* Fed. R. Civ. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Plaintiff has not met his burden for either a TRO or preliminary injunction. Instead, Plaintiff repeats the claims in his complaint.   Plaintiff has admitted he was sent to an outside heart specialist in January of 2022 and he does not allege he has been denied medical care since this time.  Plaintiff has not alleged he will face irreparable harm without injunctive relief.

IT IS THEREFORE ORDERED:

1) Plaintiff's motion for leave to amend [3] and petition to proceed *in forma pauperis* [4] are granted.  Pursuant to a review of the complaint, the Court finds Plaintiff has alleged Defendant Heather Hogan and Jane Doe nursing staff violated Plaintiff's Fourteenth Amendment rights when they either refused to

respond when he reported dizziness, headaches, or shortness of breath; refused to monitor his blood pressure; or refused to notify a doctor when his blood pressure numbers were high from August 2021 through January of 2022. The claim is stated against the Defendants in their individual capacities only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said

Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel. The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a

Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel. The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a

change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Dismiss Defendants Donathan, Jumper, and Wexford for failure to articulate a claim upon which relief can be granted; 2) Add Defendants Nursing Jane Doe 1-6; 3) Attempt service on Defendants pursuant to the standard procedures; 4) Set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; and 5) Enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED this 22nd day of April, 2022.

s/ James E. Shadid

_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE